# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER LEFEVER,** *et al.*, | : | |
| Plaintiff | : | CIVIL NO. 3:17-CV-1499 |
| v. | : | (Judge Caputo) |
| **UNITED STATES OF AMERICA,** | : | |
| Defendant | : | |

# M E M O R A N D U M

    Mr. LeFever, a federal prisoner previously housed at the United States Penitentiary, Lewisburg, joined other inmates in filing this action against the United States of America pursuant to the Federal Tort Claims Act (FTCA) 28 U.S.C. § 2401, *et seq.* and 28 U.S.C. § 2675, *et seq.* after falling ill from consuming food tainted with salmonella bacteria. (ECF No. 1.) The Court, with the consent of the Mr. LeFever, referred the matter to the Prison Litigation Settlement Program for mediation. (ECF No. 67.) On June 28, 2019, following a Report of the Mediator that a settlement was reached, the Court dismissed Mr. LeFever as a party to the action without prejudice to the right of either party, upon good cause shown, to reinstate the action within ninety (90) days if settlement was not consummated. (ECF Nos. 73 and 75.)

    Since then Mr. LeFever has filed multiple motions objecting to his dismissal from this action because: (1) the United States failed to timely pay the agreed to sum; and (2) he believed the settlement exclusively pertained to the November 12, 2016 salmonella incident and his November 26, 2016 FTCA claim still remains to be litigated or settled. *See* ECF Nos. 80, 82 and 92. The United States asserts Mr. LeFever received the agreed

to payment in October 2, 2019, and that the Stipulation for Compromise Settlement and Release (settlement agreement) resolved all claims between the parties.  *See* ECF No. 89 and 89-1 at 3 - 8.

For the reasons explained below, the Court will deny Mr. LeFever's motions objecting to the dismissal of his case, motion for leave to file summary judgment, and motion for a hearing.

I.  **Relevant Facts**

Mr. LeFever and other inmates formerly housed at USP-Lewisburg in November 2016, filed this action after falling ill from consuming a meal tainted with salmonella.  (ECF No. 1.)  Mr. LeFever alleges he suffered from food poisoning on two separate occasions: November 12, 2016 and then again on November 24, 2016.  (*Id*. at ¶ 3 and ¶ 8.)

In 2019, Mr. LeFever and the United States entered into a settlement agreement. (ECF No. 89-1.)  Mr. LeFever signed the agreement on June 26, 2019, and the United States signed the agreement on July 8, 2019.  (*Id*. at 8.)  On July 15, 2019, the United States advised Mr. LeFever that it "may take up to eight weeks … [for the agreed to sum] … to be electronically deposited into [his] account."  (*Id*. at 9.)  The Government sent payment to Mr. LeFever on October 2, 2019.  (*Id*. at 10.)

The first paragraph of the five-page settlement agreement reads as follows:

> The parties do hereby agree to settle and compromise each and every claim of Christopher LeFever of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Stipulation for Compromise Settlement and Release.

(*Id*. at 3.) Paragraph 2 notes that the agreed to "sum shall be in full settlement and satisfaction of any and all claims … causes of action of whatsoever kind and nature …" between the parties. (*Id*. at 5.) The following paragraph confirms that "Plaintiff Christopher LeFever … agree[s] to accept the sums set forth in this Stipulation for Compromise Settlement and Release in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature …" (*Id*.) The parties affirmed that "[t]his settlement is entered into by all parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation" and that "the terms of this agreement are contractual". (*Id*. at 6 and 7.) "No promise or inducement that is not herein expressed has been made to any of the parties and that the parties do not rely on any statement or representation made by any person not otherwise contained" within the settlement agreement. (*Id*. at 7.)

Mr. LeFever argues the terms of the settlement agreement only cover his November 12, 2016 FTCA claim and that his November 24, 2016 FTCA claim is unresolved. (ECF No. 83 at 3.) Mr. LeFever states he agreed to the settlement based on the United States' verbal representation that the settlement was for the November 12, 2016 incident. (*Id*. at ¶¶ 7-8.) "Nowhere in the agreement does it say that they were settl[ing] on both incidents of Nov. 12 – Nov. 24, 2016." (ECF No. 93.) He states he would not have agreed to the settlement sum if he thought it was for both claims. (*Id.* at 3.)

**II. Standard of Review**

"In ongoing litigation, district courts have the jurisdiction to decide whether the parties have settled the action." *Bryan v. Erie Cty. Office of Children & Youth*, 752 F.3d 316, 323 (3d Cir. 2014).

"[A] settlement agreement, voluntarily entered into, is binding on the parties." *Lombardo v. Flynn*, 748 F. App'x 434, 435 (3d Cir. 2019) (citing *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970)). "The validity and enforceability of settlement agreements is governed by state contract law." *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2012) (nonprecedential). "To be enforceable, a settlement agreement must possess all of the elements of a valid contract." *Lombardo*, 748 F. App'x at 435. Under Pennsylvania law, "[t]he essential elements of a contract are an offer, acceptance, and consideration or mutual meetings of the minds." *Riviello v. First Nat'l Cmty. Bank*, No. 3:10-2347, 2013 WL 1348259, at *1 (M.D. Pa. Apr. 3, 2013) (Mannion, J.).

To determine whether both parties manifested an intention to be bound, "the object of inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009). "The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 243 (3d Cir. 2008) (quoting *Murphy v. Duquesne Univ. of the Holy Ghost*, 565 Pa. 571, 777 A.2d 418, 429 (2001) and applying Pennsylvania law). "[I]n Pennsylvania, the general rule for construction of releases is that the intention of the parties must govern, but this intention

must be gathered from the language of the release. *Evans v. Marks,* 421 Pa. 146, 218 A.2d 802 (1966). "[T]he meaning of a settlement agreement should initially be discerned by looking to the four corners of the agreement itself. An agreement is unambiguous when it is reasonably capable of only one construction." *Marwood v. Elizabeth Forward Sch. Dist.,* 93 F. App'x 333, 336 (3d Cir. 2004) (citation omitted). Finally, a signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake. *Kent v. Fair,* 392 Pa. 272, 140 A.2d 445 (1958)." *Three Rivers Motor Co. v. Ford Motors Co.,* 522 F.2d 885, 892 (3d Cir.1975). The agreement remains binding, even if a party has a change of heart after assenting to its terms. *Pugh v. Super Fresh Food Markets, Inc.*, 640 F. Supp. 1306, 1308 (E.D. Pa. 1986). "Having second thoughts about the results of a valid settlement agreement does not justify setting [it] aside." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (alteration and internal quotation marks omitted).

### III. Discussion

#### A. Non-Payment of Agreed to Settlement Sum

The United States represents that Mr. LeFever received the funds in October 2019. (ECF No. 89.) Mr. LeFever does not dispute this in his Reply brief. (ECF No. 93.) Thus, the issue of whether Mr. LeFever received the agreed to sum now appears to be moot.

#### B. Claims Resolved by the Settlement Agreement

Mr. LeFever argues the settlement agreement does not completely resolve his interests in this action as it only disposes of his November 12, 2016 claim and not his

November 24, 2016 claim.  The Court does not agree.  The evidence of record demonstrates that there was an objective meeting of the minds between the parties and that the parties reached an enforceable all-inclusive settlement.  First, following the mediation date, the mediator advised the Court "the matter is settled".  (ECF No. 73.) Second, the unambiguous language of the settlement agreement clearly defines the parties agreed to a single sum in consideration for the settlement of all of Mr. LeFever's FTCA claims and with the intent of "avoiding the expenses and risks of further litigation." *See* ECF No. 89-1 at 6.  If dissatisfied with the terms of the agreement, Mr. LeFever could have objected and not signed it.  However, he did sign it, affirming his acceptance of and consent to its terms.  Finally, Mr. LeFever does not claim he involuntarily signed the agreement, or did so under duress, or was somehow impaired at the time of signing.

### IV. Conclusion

Considering the foregoing, the Court finds that a valid and enforceable settlement exists between the parties.  The Court will deny Mr. LeFever's motion objecting to the dismissal of his case, motion for leave to file summary judgment, and motion for a hearing.

An appropriate order follows.

Date:  February 11, 2020           /s/ A. Richard Caputo
                                                  **A. RICHARD CAPUTO**
                                                  **United States District Judge**